IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BERNARD BYRNES and RITA BYRNES,<br>Plaintiffs,<br>v.<br>CITY OF BRIGANTINE, and MARC LEMONAGER,<br>Defendants. | HON. JEROME B. SIMANDLE<br>Civil Action No. 05-5960 (JBS)<br>**OPINION** |

APPEARANCES:

Richard T. Fauntleroy, Esq.
RICHARD T. FAUNTLEROY, P.C.
1525 South Main St.
Pleasantville, NJ 08232
Attorney for the Plaintiffs Bernard and Rita Byrnes

Thomas B. Reynolds, Esq.
REYNOLDS, DRAKE, WRIGHT & MARCZYK, P.C.
29 North Shore Road
Absecon, NJ 08201
Attorney for the Defendants Marc Lemonager and the City of Brigantine

**SIMANDLE**, District Judge:

This matter comes before the Court upon the motion for summary judgment of Defendants City of Brigantine and Officer Marc Lemonager (collectively "Defendants") [Docket Item No. 16], and the subsequent cross-motion of Plaintiffs Bernard Byrnes and Rita Byrnes (collectively "Plaintiffs") for partial summary judgment [Docket Item No. 17]. The Court has considered all submissions, and for the reasons detailed below, shall grant in part and deny in part Defendants' motion for summary judgment.

The Court will deny Plaintiffs' cross-motion for partial summary judgment.

## I. BACKGROUND

### A. Factual History

On the evening of January 6, 2004, between seven and eight o'clock, Mr. Bernard Byrnes, an eighty-year-old retired steel worker, drove from his home in Brigantine, New Jersey to Atlantic City, New Jersey to retrieve his seventy-year-old wife, Mrs. Rita Byrnes, from her job at the Trump Plaza arcade. (Pls.' Br. at 1.) Mr. Byrnes picked up his wife, and on their way home, got caught in traffic on the Brigantine Bridge due to an emergency personnel response to a fatal car accident farther down the road towards Brigantine. (Id.)

At the foot of the bridge, Brigantine police officers were controlling traffic. Police Officer Marc Lemonager had positioned his police cruiser in portions of the two west-bound lanes, perpendicular to the flow of traffic, and was physically blocking traffic. (Dep. Tr. of Marc Lemonager at 60.) As vehicles approached Officer Lemonager's position, he informed them that traffic would not be resuming for at least twenty-five minutes, instructed them to make a U-turn in a predesignated turn-around area, and ordered them to return to Atlantic City. (Id. at 67.) Some vehicles complied, and a few ignored his orders and continued driving to Brigantine via a nearby alternate

route, unblocked by police.

When the Plaintiffs' vehicle reached Officer Lemonager's position, Mr. Byrnes informed him that some cars were disobeying his instructions and asked if he too could continue on towards his home in Brigantine. (Dep. Tr. of Bernard Byrnes at 34.) Officer Lemonager refused, and after some continued discussion, instructed Mr. Byrnes to pull his car off to the side of the road. (Id.)

At first, Mr. Byrnes complied with Officer Lemonager's direction. (Id.) Still conducting traffic, however, Officer Lemonager did not immediately attend to him. (Id. at 40-41.) Mr. Byrnes became impatient, and complaining of an inability to sit due to chronic back pain, he exited his vehicle. (Id.) Mr. Byrnes proceeded to the rear of his car, retrieved his walker from the trunk, and began ambulating down the street towards Brigantine. (Id. at 41.)

According to the Plaintiffs, Officer Lemonager then left his post directing traffic and tackled Mr. Byrnes from behind. (Dep. Tr. of Rita Byrnes at 23.) Plaintiffs further contend that when Mrs. Brynes realized that her husband was in danger, she left the confines of their vehicle, approached Officer Lemonager, and began to plead with him not to hurt her aged, diabetic husband. (Id. at 23-25.) Then, say Plaintiffs, Officer Lemonager placed Mrs. Byrnes in a choke-hold around her neck, causing her to fall

to the ground and rendering her momentarily unconscious. (Id. at 26.)

Officer Lemonager, however, denies tackling either of the Plaintiffs. He insists that he only grabbed Mr. Byrnes's right bicep in an attempt to effectuate his arrest. (Dep. of Marc Lemonager at 87-93.) He claims that as he was gaining control of Mr. Byrnes, he saw Mrs. Byrnes approach him with a raised arm; unsure of her intentions, he moved towards her. (Id.) He claims that Mr. Byrnes then intentionally and dramatically fell to the ground, loudly announcing his intention to bring suit. Contemporaneously, Officer Lemonager grabbed Mrs. Byrnes by the elbow and arm in an "escort hold" intending to take her back to his vehicle. According to Officer Lemonager, Mrs. Byrnes followed her husband's example by dramatically falling to the ground and echoing his intent to sue. (Id.) Officer Lemonager placed handcuffs on Mr. Byrnes but only fastened one of the two cuffs due to his perception that Mr. Byrnes suffered from "range of motion" problems. (Id. at 108.)

At this point several fellow officers, including Sergeant Ceann E. MacLean, responded to Lemonager's request for assistance. As soon as Sergeant MacLean arrived on the scene, Officer Lemonager indicated his intent to arrest Plaintiffs, voiced his growing concern that traffic was backing up dangerously close to the crest of the bridge, and returned to his

post diverting that traffic. (Tr. 08/10/04 at 84). Officer P. Scott McClaskey placed one handcuff on Mrs. Byrnes (id.), and Sergeant MacLean began addressing the situation. (Tr. 08/10/04 at 70.) Sergeant MacLean instructed her subordinate officers that Plaintiffs would not be taken into custody because they were considered a low priority. Sergeant MacLean also tended to Mrs. Byrnes's scrapes and bruises and encouraged Mr. Byrnes to immediately take his wife to the hospital. (Id. at 30-31.) Accordingly, Plaintiffs proceeded to City Division of Atlantic City Medical Center. (Dep. of Bernard Byrnes at 55.) Following their departure, Sergeant MacLean solicited witness statements from several stopped motorists including Jamison McGibbery and Susan C. Johnson. (Tr. 08/10/04 at 71.)

At the medical center, Mrs. Byrnes underwent diagnostic imaging. (See Diagnostic Imaging Report of Dr. Jack Shakarsky at 1.) The imaging revealed "no evidence of fracture or intrinsic bony abnormality[, m]ild degenerative joint disease . . . [and] no evidence of fracture or intrinsic bony abnormality [of her right fourth finger]." (Id.) Mr. Byrnes was not examined by medical personnel at the hospital that night.

As a result of the incident, Mr. Byrnes was issued a disorderly conduct summons for violation of N.J. Stat. Ann.

2C:29-2a(1)[1], a petty disorderly persons summons for violation of N.J. Stat. Ann. 2C:29-2a(1)[2], and a motor vehicle ticket for failing to obey Officer Lemonager's orders in violation of N.J. Stat. Ann. 39:4-80[3]. Officer Lemonager issued the same disorderly and petty disorderly persons charges to Mrs. Byrnes.

Plaintiffs retained counsel and sought to have criminal charges brought against Officer Lemonager pursuant to N.J. Stat. Ann. 2C:12-1B(1) for "purposefully or knowingly attempting to cause bodily harm." (Tr. 02/24/04 at 3-9.) The Brigantine Municipal Court in Atlantic County, New Jersey held a hearing to determine if there was probable cause to issue the charge. (Id.) After hearing testimony from both Mr. and Mrs. Byrnes, Judge Gerard C. Gross held that there was not probable cause to issue the requested charges, reasoning that "[i]t is clear to me that whatever happened happened because you decided you didn't have to

---

[1] N.J. Stat. Ann. 2C:29-2a(1) provides, in pertinent part, "[a] person is guilty of a disorderly persons offense if he purposely prevents or attempts to prevent a law enforcement officer from effecting an arrest." N.J. Stat. Ann. 2C:29:2a(1).

[2] N.J. Stat. Ann. 2C:33-2a(1) provides, in pertinent part, "[a] person is guilty of a petty disorderly persons offense, if with purpose to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof he engages in fighting or threatening, or in violent or tumultuous behavior." N.J. Stat. Ann. 2C:33-2a(1).

[3] N.J. Stat. Ann. 39:4-80 provides, in pertinent part, "[w]hen a traffic or police officer is stationed in a highway for the purpose of directing traffic, he may regulate and control traffic at that point, and all drivers of vehicles shall obey his orders and directions . . . ." N.J. Stat. Ann. 39:4-80.

do what the officer wanted you to do . . . ." (Tr. 02/24/04 at 8.)

On August 10, 2004, Mr. and Mrs. Byrnes pled not guilty to their citations in Brigantine Municipal Court. (Tr. 08/10/04 at 6.) Following a trial on August 10, 2004, which featured the testimony of Officer Lemonager, Sergeant MacLean, Officer McClaskey, and eye-witness motorist Susan Johnson, Judge William S. Cappuccio found Mr. Byrnes guilty of violating N.J. Stat. Ann. 39:4-80 for failure to follow the lawful order of a police officer because "he was asked on various occasions, uncontradicted again, that he do certain things regarding an emergency condition, and he did not do so." (Tr. 08/10/04 at 139.) Judge Cappuccio also found Mr. Byrnes guilty of violating N.J. Stat. Ann. 2C:33-2a(1) for petty disorderly conduct because

> [h]e threatened not to continue as the officer requested, to obey the officer's directions. He threatened to sue. The falling on the ground I find that partially towards that, the fact of what he threatened the officer for.

(Id. at 140). Judge Cappuccio found Mr. Byrnes not guilty of violating N.J. Stat. Ann. 2C:29-2a(1) for disorderly conduct. (Id. at 139.)

With respect to Mrs. Byrnes, the judge found her not guilty of all charges, noting that

> [t]he charges against Rita Byrnes on the 29-2A, I find her not guilty beyond a reasonable doubt, and I find her almost guilty but not guilty on the other charge . . . [m]ost likely she did try to commit – she tried –

> her actions were that she almost committed this offense, and had there been more, she would have been guilty of such, but as to what is on the record, there is no proof beyond a reasonable doubt that she's guilty.

(Id. at 140.)

Shortly after the incident, on January 14, 2004, Mrs. Byrnes was seen by Atlantic Shore Orthopaedics ("Atlantic Shore") for knee and ankle pain.[4] (Pls.' Br. Ex. B 13-14.) Mrs. Byrnes continued to visit these doctors regularly after the incident, receiving at least eight examinations between January and December 2004. (Id. at 2-14.)

In addition, on December 2, 2004, Mrs. Byrnes was examined by Dr. Richard Cohen, a licenced psychologist, regarding her fear of police officers and blinking police lights. (Id. at 29-35.) Dr. Cohen reported, "prognosis for recovery is fair . . . she appears to have been frightened and initially traumatized by the events . . . it is the opinion of this examiner . . . that this event did not precipitate any permanent damage." (Id. at 30.)

Also shortly after the incident (as early as March 19, 2004), Mr. Byrnes began receiving medical treatment for pre-existing back pain that he alleges was exacerbated by his

---

[4] The record indicates that Mrs. Byrnes was already under the care of Atlantic Shore for serious knee conditions before the incident, having visited these physicians on at least ten occasions from November 10, 2003 to January 14, 2004. (Pls.'s Br. at 16-28.)

dealings with Officer Lemonager.[5] (Pls.' Br. Ex. A at 39.) From April 29, 2004 to July 22, 2004, Mr. Byrnes received three lumbar epidural steroid injections from Dr. Gregory M. Braccia of Atlanticare Surgery Center; these treatments did not permanently resolve Mr. Byrnes' pain and disability.[6] (Id. at 30, 33, 38.)

Consequently, on November 9, 2005, Mr. Byrnes went to the Rothman Institute of Orthopaedics ("Rothman") for a surgical evaluation. (Id. at 3.) Mr. Byrnes' examining physician at Rothman, Dr. Allen S. Hildebrant, noted that Mr. Byrnes

> has a long history of low back pain and about a year of symptoms into the leg predominantly into the right buttock, posterior thigh, and calf with an aching in the leg and pain in the soles of his feet, right greater than left.

(Id.) Based on magnetic resonance imaging (MRI) of the lumbar spine, Dr. Hildebrant confirmed a September 19, 2003 diagnosis of severe spinal stenosis[7], at L4-5, mild-to-moderate stenosis at L2-3, mild stenosis at L3-4, and "right-sided disc protrusion at L5-S1 causing some right S1 root compression." (Id. at 4); (see Pls.' Br. Ex. A at 49) (memorializing initial diagnosis). Dr.

---

[5] Mr. Byrnes has experienced back pain his entire adult life, stemming from a tank explosion suffered in World War Two.

[6] The medical record is sparse regarding Mr. Byrnes' medical treatment prior to the January 6, 2004 incident; however, there is evidence that Mr. Byrnes received at least one steroidal injection prior to the incident, on July 1, 2003. (Pls.' Br. Ex. A at 45.)

[7] Stenosis is "a stricture of any canal or orifice." Stedman's Medical Dictionary (27th ed. 2000).

Hildenbrant recommended that Mr. Byrnes undergo L-3 to S-1 laminectomy[8]. (Id.)

Following Dr. Hildenbrant's recommendation, Mr. Byrnes had back surgery on November 29, 2005. (Id. at 1.) Ten days later, he returned for an "evacuation of lumbar hematoma." (Id.) Dr. Hildenbrant noted that Mr. Byrnes "was following up with a urologist," that Mr. Byrnes's "preoperative leg pain [was] gone," and that Mr. Byrnes was starting outpatient rehabilitation at Betty Bacharach Institute for Rehabilitation ("Bacharach") (Id.)

Following his back surgery, Mr. Byrnes made twenty-one visits to Bacharach, (id. at 25), and his discharge report stated that he had "no difficulty sitting," confidence in driving long distances, improvement in bending, and had enjoyed a successful return to all home and leisure activities. (Id.)

On October 11, 2006, a defense medical expert, Dr. Roy B. Friedenthal, examined Plaintiffs. (Ltrs. December 11, 2006.) He reported that

> Ms. Byrnes has recovered from soft tissue contusions and abrasions that were reported[;] she had pre-existing degenerative arthritis in both knees [and] [t]here is no evidence that any new internal derangement was sustained as a result of the [incident] . . . There is no evidence of permanency or need for future treatment on the basis of injuries reportedly sustained on January 6, 2004.

---

[8] Laminectomy is the "excision of a vertebral lamina, commonly used to denote removal of the posterior arch." Stedmen's Medical Dictionary.

(Id. at 5-6.) With respect to Mr. Byrnes, Dr. Friedenthal determined that Mr. Byrnes suffers from symptoms of a pre-existing back injury and that "[t]here is no evidence that the underlying condition was either caused by or in any way altered by any superimposed injury." (Id. at 5.) Dr. Friedenthal concluded that "Mr. Byrnes is focusing upon a condition that [is] long-standing and symptomatic." (Id.)

**B. Procedural History**

On December 16, 2005, Plaintiffs filed a Complaint against the City of Brigantine and Officer Lemonager. Plaintiffs' Complaint asserts four federal counts solely against Lemonager and three state counts against both Lemonager and the City of Brigantine. Counts One and Two allege the false arrest of Mrs. and Mr. Byrnes, respectively, in violation of the Fourth and Fourteenth Amendments to the United States Constitution, as made actionable by 42 U.S.C. § 1983. (Compl. at ¶¶ 6-8.) Count Three accuses Officer Lemonager of maliciously prosecuting Plaintiffs in violation of the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution, as made actionable by 42 U.S.C. § 1983. (Id. at ¶¶ 8-9.) Count Four alleges that Officer Lemonager used excessive force against Plaintiffs in violation of the Fourth Amendment. (Id. at ¶¶ 9-10.)

In addition to Plaintiffs' claims under section 1983, Plaintiffs bring several state law claims. Count Five charges

both Officer Lemonager and the City of Brigantine with excessive use of force in violation of Article One, paragraphs one and seven of the New Jersey Constitution. (Id. at ¶ 11.) Count Six accuses both Officer Lemonager and City of Brigantine of assault and battery under New Jersey common law (id. at ¶¶ 11-12), and, finally, Count Seven accuses Officer Lemonager and City of Brigantine of false arrest and malicious prosecution under both the New Jersey Constitution and New Jersey common law (Id. at ¶¶ 12-13). Plaintiffs seek compensatory damages for loss of income, medical expenditures, and pain and suffering, as well as punitive damages from Officer Lemonager, attorney's fees and court costs, pre- and post-judgment interest, and other damages and equitable remedies "as the court may see fit to grant" on all counts. (Id. at ¶¶ 6-13.)

On May 30, 2007, Defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56, arguing that: (1) Officer Lemonager had probable cause to arrest Plaintiffs; (2) his use of force was minimal and "objectively reasonable"; (3) Mr. Byrnes' claims are barred by the Heck Doctrine[9] and collateral estoppel; (4) Plaintiffs cannot collect compensatory damages on state law claims because they suffered no permanent injuries and suffered no loss of employment; (5) Plaintiffs

[9] The Heck Doctrine provides that "a [42 U.S.C. § 1983] claim is not cognizable if it would render a conviction or sentence invalid." Heck v. Humphrey, 512 U.S. 477 (1994).

cannot recover punitive damages because no reasonable jury could find that Officer Lemonager acted with evil intent; (6)Officer Lemonager is entitled to qualified immunity; and finally, (7) the City of Brigantine must be dismissed because all claims against that municipality rest solely on grounds of vicarious liability. (Defs.' Br. at 30.)

The following day, on May 31, 2007, Plaintiffs filed a cross-motion for partial summary judgment as to Mr. and Mrs. Byrnes' allegations of excessive force in Counts Four and Five as well as Mrs. Byrnes's allegations of malicious prosecution and false arrest in Counts One, Three, and Seven. (Pls.' Br. at 18.)

## II. DISCUSSION

### A. Standard of Review

"Summary judgment is appropriate when the materials of record show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The court must review the record and ask whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Remmillard v. City of Egg Harbor City 434 F. Supp. 2d 766, 768-69 (D.N.J. 2006). A genuine issue of fact exists where the evidence is of such a nature that a reasonable jury could return a verdict in favor of

the nonmoving party, Anderson, 477 U.S. at 248, and a material fact is one which might affect the outcome of the case, id. at 248-52.

In considering a motion for summary judgment, the court will make all reasonable inferences of fact in favor of the non-moving party; in other words, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." Glass v. Snellbaker, No. 05-1971, 2007 WL 1723472, at *2 (D.N.J. June 14, 2007) (citing Hunt v. Cromartie, 526 U.S. 541, 552 (1999)) (internal citations omitted). Initially, the moving party bears the burden of showing that no genuine issue of material facts exists, regardless of which party would have that burden at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Country Floors v. Gepner, 930 F.2d 1056, 1061-63 (3d Cir. 1991). "The burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

"[T]he nonmoving party may not, in the face of a showing of a lack of a genuine issue, withstand summary judgment by resting on mere allegations or denials in the pleadings; rather, that party must set forth 'specific facts showing that there is a genuine issue for trial,' else summary judgment, 'if appropriate,' will be entered." United States v. Premises Known

as 717 S. Woodward Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993) (quoting Fed. R. Civ. P. 56(e)) (citations omitted).

**B. Analysis**

This Court will grant in part and deny in part Defendants' motion for summary judgment. For the reasons explained below, the Court will (1) dismiss all of Plaintiffs' claims arising under the New Jersey Constitution against the City of Brigantine, (2) dismiss all of Mr. Byrnes' claims against Defendants, and (3) dismiss all of Plaintiffs' state law claims for compensatory damages against Defendants premised on theories of wage-loss and pain and suffering. This Court will deny all other aspects of Defendants' motion for summary judgment. Finally, the Court will deny Plaintiffs' cross-motion for partial summary judgment.

The substantive factual issues upon which the resolution of these motions hinges are (1) whether Mr. and Mrs. Byrnes were tackled and choked by Officer Lemonager or whether they feigned police brutality in an effort to lay the groundwork for a favorable future court judgment, (2) whether Officer Lemonager told Mr. Byrnes that he was under arrest antecedent to his fall, and (3) whether Plaintiffs' injuries exist and are severe enough to justify the requested relief. Because the affidavits, depositions, and answers to interrogatories continue to produce conflicting factual accounts of the incident, there remain some genuine issues of material fact, and the Court will only grant

summary judgment as to those claims that do not present such an issue either because they are barred from re-argument by the doctrine of collateral estoppel, the party is immune from the action, or Plaintiffs simply cannot prove the requisite damages.

**1. Summary judgment for Defendants is appropriate as to all of Mr. Byrnes's federal and state claims**

a. Excessive force, assault and battery – collateral estoppel

Mr. Byrnes claims that Officer Lemonager assaulted, battered, and used excessive force against him by tackling him on the Brigantine Bridge on January 6, 2004. (Compl. at 9-12.) Mr. Byrnes further claims that he was falsely imprisoned, arrested, and maliciously prosecuted by Officer Lemonager in an attempt to intimidate him into failing to report the physical abuse. (Id. at 7-9, 12-13.) In contrast, Defendants argue that there was no assault, battery, or use of excessive force because Mr. Byrnes fell to the ground on his own accord and that there was no false detention or malicious prosecution because Officer Lemonager had probable cause to detain Mr. Byrnes for his conduct. (Defs.' Br. at 25). Indeed, Defendants insist that all of Mr. Byrnes' claims must fail, as a matter of law, because both the Heck Doctrine and collateral estoppel bar him from asserting that Officer Lemonager lacked probable cause or that he tackled him. (Id. at 31.)

Under the doctrine of collateral estoppel, a party is barred from litigating an issue where (1) the issue is identical to one

previously litigated, (2) the issue was "actually litigated", (3) the previous issue was "necessary" to the judgment, and (4) the party being estopped was fully represented in the previous hearing. Raytech Corp. v. White, 54 F.3d 187, 190 (3d Cir. 1995).

Mr. Byrnes is collaterally estopped from arguing that Officer Lemonager tackled him. In a Brigantine Municipal Court proceeding on August 10, 2004, the court found Mr. Byrnes guilty of petty disorderly conduct by reasoning that he "threatened not to continue as the officer requested, to obey the officers directions[,] he threatened to sue[,] the falling on the ground I find that partially towards that, the fact of what he threatened the officer for." (Tr. 08/10/04 at 140) (emphasis added). Throughout the trial, Mr. Byrnes was represented by Michael J. Mackler, Esq., and the issue of Mr. Byrnes's fall was the subject of much testimony during the litigation. (Id. at 17-19, 98-99). Moreover, Judge Cappuccio's finding that Mr. Byrnes dramatically fell and mimicked being tackled was one of the grounds upon which he based his decision that Mr. Byrnes had engaged in petty disorderly conduct. See Jean Alexander Cosmetics, Inc. v. L'Oreal U.S.A. Inc., 458 F.3d 244, 253 (3d Cir. 2006) (holding that when a decision rests on multiple grounds, each ground is necessary to the judgment).

Consequently, Mr. Byrnes is collaterally estopped from

claiming that Officer Lemonager tackled him because at his Brigantine Municipal Court trial on August 10, 2004, this issue was litigated and resolved against him. As a result, Mr. Byrnes cannot prevail on his federal or state claims for excessive use of police force, illegal arrest and imprisonment, and assault and battery, nor can he prevail on his federal and state malicious prosecution claims for prosecution under N.J. Stat. Ann. 2C:33-2a(1) or N.J. Stat. Ann. 39:4-80.

First, Mr. Byrnes cannot prevail on his state or federal claim for excessive use of force or his state claim for assault and battery because he is precluded by the aforementioned Brigantine Municipal Court decision from making the factual argument that Officer Lemonager applied any force, outside of a standard arm hold, at all. Judge Cappuccio determined that Mr. Byrnes' fall was volitional and not because he was "tackled" by Officer Lemonager. The finding that Mr. Byrnes was guilty of a petty disorderly offense beyond a reasonable doubt was necessarily predicated upon the judicial determination that he feigned his fall, not that he was tackled. In the absence of a tackle, his claim of excessive use of force must fail. Plaintiff claims no other physical abuse, and therefore his assault, battery, and excessive use of force claims do not survive the Brigantine Municipal Court decision.

b. False arrest and imprisonment

For similar reasons, Mr. Byrnes cannot prevail on his false arrest and imprisonment claims. "As a key element of each of these claims, Plaintiff must establish that [the arresting officer] acted without probable cause." Garlanger v. Verbeke, 223 F. Supp. 2d 596, 606-07 (D.N.J. 2002) (citing cases). The issue of whether Officer Lemonager had probable cause to arrest Mr. Byrnes was litigated in the Brigantine Municipal Court proceedings. Judge Cappuccio found that not only did Officer Lemonager have probable cause to arrest Mr. Byrnes, but that Mr. Byrnes was in fact guilty of violating N.J. Stat. Ann. 39:4-80 for failure to follow the lawful order of a police officer and N.J. Stat. Ann. 2C:33-2a(1) for petty disorderly conduct, because Mr. Byrnes repeatedly disregarded Officer Lemonager's instructions and purposefully fell to the ground. (Tr. 08/10/04 at 139-40.) Because the doctrine of collateral estoppel bars Mr. Byrnes from relitigating before this Court the question of probable cause that was decided in the Municipal Court proceedings, Mr. Byrnes' claims for false arrest and false imprisonment must fail. See, e.g., Sibert v. Phelan, 901 F. Supp. 183, 186 (D.N.J. 1995) (noting that "issue preclusion does apply in cases in which a convicted defendant sues the government on a claim that is inconsistent with facts established by the conviction") (quoting Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 4474).

c. Malicious prosecution

Finally, Mr. Byrnes cannot prevail on any of his malicious prosecution claims.[10] In order to prove malicious prosecution under section 1983, a plaintiff must show that:

> (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003). With regard to his prosecution under N.J. Stat. Ann. 2C:33-2a(1) for petty disorderly conduct or his prosecution under N.J. Stat. Ann. 39:4-80 for failure to follow Officer Lemonager's orders, Mr. Byrnes cannot succeed in proving malicious prosecution because he cannot establish that the criminal proceeding ended in his favor. In the Municipal Court proceedings, Judge Cappuccio found Mr. Byrnes guilty of the petty disorderly offense of tumultuous behavior creating a risk of public inconvenience, annoyance, or alarm by faking his fall at the hands of police and claiming brutality, in violation of 2C:33-2a(1), and failing to obey the orders of the officer directing traffic in violation of

[10] Plaintiffs' Brief in Opposition to defendants' Motion for Summary Judgment appears to concede that Mr. Byrnes' claims for malicious prosecution under federal and state law should be dismissed, since the malicious prosecution claims are advanced only as to Mrs. Byrnes. (Pls.' Opp'n Br. at 18-21.)

39:4-80. On both of these charges, the proceedings did not end in Mr. Byrnes' favor. Consequently, Mr. Byrnes cannot establish that he was maliciously prosecuted under sections 2C:33-2a(1) and 39:4-80, and his claims as to these charges will be dismissed.

Mr. Byrnes' claim that he was maliciously prosecuted for his charged violation of N.J. Stat. Ann. 2C:29-2a(1), which prohibits "purposely prevent[ing] or attempt[ing] to prevent a law enforcement officer from effecting an arrest," will likewise be dismissed, but for different reasons. With regard to the section 2C:29-2a(1) charge, unlike the other charges that were brought against Mr. Byrnes, Judge Cappuccio found Mr. Byrnes not guilty, thus indicating that "the criminal proceeding [with respect to the section 2C:29-2a(1) charge] ended in plaintiff's favor." Marasco, 318 F.3d at 521. However, because the Court finds that Mr. Byrnes has not shown that he "suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding," id., his malicious prosecution claim as to this count cannot proceed.

Since the Supreme Court's decision in Albright v. Oliver, 510 U.S. 266 (1994), the Third Circuit's jurisprudence for malicious prosecution claims brought under section 1983 has consistently required plaintiffs to demonstrate a "constitutional injury." Donahue v. Gavin, 280 F.3d 371, 380 (3d Cir. 2002) (a "deprivation of liberty consistent with the [Fourth Amendment's]

concept of seizure" is cognizable in a section 1983 malicious prosecution claim); Johnson v. Knorr, 477 F.3d 75, 82 n.8 (3d Cir. 2007) (noting that a "constitutional malicious prosecution claim might be brought raising a First Amendment claim"). Here, the constitutional injury implicit in Mr. Byrnes' claim that he was maliciously prosecuted under N.J. Stat. Ann. 2C:29-2a(1) is that he "suffered a seizure as a consequence of a legal proceeding." Gallo v. City of Philadelphia, 161 F.3d 217, 222 (3d Cir. 1998).

The record reveals that Mr. Byrnes experienced no such deprivation. Mr. Byrnes was not taken into custody following the roadside incident on January 6, 2004. (Tr. 08/10/04 at 70-71). The only conceivable "seizure" incident to a legal proceeding that Mr. Byrnes experienced was having to attend the trial before the Municipal Court regarding his citations. The Court of Appeals for the Third Circuit addressed whether the mere attendance at trial constitutes a Fourth Amendment seizure for section 1983 malicious prosecution purposes in DiBella v. Borough of Beachwood:

> [Defendants] were only issued a summons; they were never arrested; they never posted bail; they were free to travel; and they did not have to report to Pretrial Services. Their liberty was restricted only during the Municipal Court trials and the Fourth Amendment does not extend beyond the period of pretrial restrictions . . . . [Defendants] failed to state a cause of action for malicious prosecution because their attendance at trial did not qualify as a Fourth Amendment seizure.

407 F.3d 599, 603 (3d Cir. 2005). Like the defendants in DiBella, Mr. Byrnes cannot establish that he "suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Marasco, 318 F.3d at 521. Notwithstanding his acquittal on the section 2C:29-2a(1) charge, Plaintiff cannot factually succeed upon his malicious prosecution claim because no reasonable jury could find that he suffered deprivation of liberty as required by Albright and its progeny.

In sum, summary judgment is appropriate for Defendants as to all claims brought by Mr. Byrnes. Defendants' motion for summary judgment as to Mr. Byrnes' claims will, therefore, be granted.

**2. Summary judgment is not appropriate as to Mrs. Byrnes' claims against Officer Lemonager because genuine issues remain as to the cause of her fall**

Summary judgment is inappropriate as to Mrs. Byrnes' claims against Officer Lemonager because genuine issues of fact remain with regard to how Mrs. Brynes ended up on the ground. Mrs. Byrnes argues that Officer Lemonager's use of a choking technique to subdue her constituted an assault, battery, and that the force he used was excessive in relation to the threat she posed. Defendants argue that Lemonager did not assault, batter, or use excessive force against Mrs. Byrnes, reasoning that "not every scrape" effected during the course of a lawful arrest constitutes excessive use of force and that the force Officer Lemonager used was reasonable in light of Mrs. Byrnes' act of moving towards him

with one hand raised. (Defs.' Br. at 27-28).

Police use of force is excessive when it is objectively unreasonable. See Melliot v. Heemer, 161 F.3d 117, 122 (3d Cir. 1998) (citing Graham v. Connor, 490 U.S. 386, 388 (1989)); State v. Ravotto, 169 N.J. 227, 306-07 (2001). Factors indicating unreasonableness include: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. Groman, 47 F.2d at 634; House v. New Castle Co., 824 F. Supp. 477, 487 (D. Del. 1993). The court should also look to such factors as the need to apply force, the amount of force used, and whether force was used maliciously for the very purpose of causing harm. Smith v. Mensinger, 293 F.3d 641, 648-49 (3d Cir. 2002).

This Court is unable to determine whether Officer Lemonager's conduct toward Mrs. Byrnes was excessive or whether it constituted an assault and battery, because it cannot determine from the parties' papers, in light of her acquittal on all charges, whether Mrs. Byrnes purposefully fell as Defendants claim or whether Officer Lemonager excessively subdued her. As noted, although Mrs. Byrnes alleges that Officer Lemonager placed her in a choke-hold and caused her to fall to the ground, sustaining damage to her knees, (Dep. of Rita Byrnes at 26),

Officer Lemonager insists that he placed her in an arm-hold known as an "escort-hold" and that she fell to the ground of her own volition. (Dep. Tr. of Marc Lemonager at 101.) Because the issue of what Officer Lemonager actually did remains unresolved, this Court is unable to determine whether his actions were objectively reasonable, and therefore summary judgment is not appropriate.

The same factual questions surround Mrs. Byrnes' false imprisonment and malicious prosecution claims. To establish each claim, Mrs. Byrnes would need to show that Officer Lemonager acted without probable cause. See Garlanger, 223 F. Supp. 2d at 606-07 (showing of no probable cause required for false imprisonment and malicious prosecution claims under section 1983); Hayes v. Mercer County, 217 N.J. Super. 614, 623 (N.J. Super. A.D. 1987) (showing of no probable cause required for false imprisonment claim under New Jersey law); Penwag Property Co., Inc. v. Landau, 76 N.J. 595, 598 (1978) (showing of no probable cause required for malicious prosecution claim under New Jersey law). However, the determination of whether Officer Lemonager had probable cause for charging Mrs. Byrnes with petty disorderly conduct and with conduct preventing a lawful arrest is intricately tied to the unresolved factual issue of whether Mrs. Byrnes was a victim of police violence or whether she was feigning injury in an attempt to make a commotion and prevent the

officer from arresting her husband. Therefore, Mrs. Byrnes's motion for summary judgment will also be denied.[11]

**3. City of Brigantine is immune from Plaintiffs' charges in Counts Five and Seven that arise under the New Jersey Constitution; Officer Lemonager is not entitled to qualified immunity against Mrs. Byrnes' claims**

Both Defendants argue that they are immune from suit for damages. A municipality is immune from civil rights suits for damages that rest solely upon a theory of respondeat superior. See Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 694 (1978) (holding that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents"); Lloyd v. Borough of Stone Harbor, 179 N.J. Super. 496, 517 (Ch. Div. 1981) (adopting Monell holding for municipal liability under the New Jersey Constitution). With regard to suits brought under New Jersey law, a municipality "is liable for injury proximately caused by an act . . . of a public employee within the scope of

[11] Defendants' argument that they are entitled to summary judgment based on the contention that the Brigantine Municipal Court's finding that Mrs. Byrnes was "almost guilty," estops Mrs. Byrnes from asserting that Lemonager arrested and prosecuted her without probable cause is non-meritorious. As noted supra, collateral estoppel only applies to issues that were necessary to the previous judgment. Because Mrs. Byrnes was found not guilty, the fact that the judge noted that he might have decided differently if he had more evidence is certainly not necessary to that judgment. That dicta cannot estop Mrs. Byrnes from alleging that Officer Lemonager acted without probable cause. While logic may demonstrate that Mrs. Byrnes' fall merely mimicked her husband's misconduct, the Municipal Judge did not so find beyond a reasonable doubt, so a reasonable inference remains available to her, as the party opposing summary judgment, that Officer Lemonager applied excessive force to arrest her.

his employment . . . ." N.J. Stat. Ann. 59:2-2.

Similarly, police officers enjoy qualified immunity from suits for damages when, while performing official duties, their actions are reasonably consistent with the rights they have allegedly violated. Anderson v. Creighton, 483 U.S. 635, 638 (1987); La v. Hayducka, 269 F. Supp.2d 575, 582 (D.N.J. 2003); see also Lloyd, 179 N.J. Super. at 517 (holding that "the immunities of [municipal] officials sued directly under our Constitution are identical to those provided by federal law").

In the instant case, City of Brigantine is immune from Plaintiffs' charges of violating the New Jersey Constitution contained in Counts Five and Seven because their claims hinge solely on Officer Lemonager's conduct and do not allege that their harm derived from municipal policy.

However, Officer Lemonager does not enjoy immunity because, as discussed supra, there remain genuine issues of fact as to whether he applied excessive force to Mrs. Byrnes.[12] Indeed, viewing all facts in a light most favorable to Plaintiff Rita Byrnes, this Court is unable to hold that Officer Lemonager is entitled to qualified immunity because placing an elderly woman in an choke-hold and forcing her to the ground for the offense of

[12] Because this Court will grant Defendants' motion for summary judgment as to Mr. Byrnes' excessive force and false arrest allegations contained in Counts Five and Seven, on other grounds, it is unnecessary to discuss Officer Lemonager's immunity from these charges.

pleading with an officer to stop hurting her frail and aging husband is not reasonably consistent with a citizen's Fourth Amendment right to be free from illegal search and seizure. If Mrs. Byrnes proves these facts, no reasonable officer in Lemonager's position could have believed that his conduct toward Mrs. Byrnes was proper under well-settled principles of constitutional law governing the application of force during arrest. Accordingly, Officer Lemonager has not shown entitlement to qualified immunity as to Mrs. Byrnes' claims against him.

**4. Plaintiff Rita Byrnes is unable to prove that she sustained permanent injury or suffered loss of income under New Jersey Tort Claims Act (Counts 5, 6, and 7)**

Summary judgement for Defendants is appropriate as to the claims of Rita Byrnes arising under New Jersey law (Counts Five, Six and Seven) to the extent of seeking damages resulting from economic loss and for pain and suffering contained in Counts Five, Six, and Seven.[13] First, Mrs. Byrnes is entitled to no compensatory damages for loss of employment because Mrs. Byrnes, by her own admission, did not miss any scheduled work as a result of the incident. (Dep. of Rita Byrnes at 15).

Second, Mrs. Byrnes does not meet the threshold injuries required by the New Jersey Tort Claims Act for recovery of

[13] Because summary judgment will be entered against all of Mr. Byrnes' claims on other grounds, as noted above, it is unnecessary to determine whether the New Jersey Tort Claims Act would limit his recovery upon Counts Five, Six, and Seven.

compensatory damages against state entities or officials for pain and suffering. The New Jersey Tort Claims Act only authorizes pain and suffering compensation when the victim suffers "permanent loss of bodily function" resulting in medical bills in excess of $3,600. N.J. Stat. Ann. 59:9-2(d). Indeed, in their opposition brief, Plaintiffs concede that they cannot meet these Tort Claims Act requirements. (Pls.' Opp. Br. at 24.) Moreover, Mrs. Byrnes' physical and psychological reports indicate that she incurred no loss of bodily function. (Pls.' Br. Ex. B at 29). Therefore, Mrs. Byrnes cannot recover for pain and suffering or loss of employment on these claims under New Jersey law in Counts Five, Six, and Seven.

## III. CONCLUSION

For the reasons explained, this Court will grant in part and deny in party Defendants' motion for summary judgment. Specifically, the Court will (1) dismiss Mr. Byrnes' federal and state claims, contained in Counts Two, Four, Five, Six, and Seven, for excessive use of force, assault and battery, unlawful arrest and detention, as well as his federal and state allegations of malicious prosecution in Counts Three and Seven; (2) dismiss Plaintiffs' claims against City of Brigantine, contained in Counts Five and Seven, arising under the New Jersey Constitution; and (3) dismiss all claims by Mrs. Byrnes for

compensatory damages, contained in Counts Five, Six, and Seven, stemming from loss of income or pain and suffering. The Court will deny the remainder of the relief sought by Defendants and deny Plaintiffs' cross-motion for summary judgment. The accompanying Order will be entered.

**December 12, 2007**
Date

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
United States District Judge